# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    >

    v.                           >            NO. 0101 1:13CR10242-2

,                             >

    Defendant                    >

MARQUIS SIMMONS

## SENTENCING MEMORANDUM FOR MARQUIS SIMMONS

Now comes the defendant's counsel and presents the following for the court's consideration.

Counsel is asking for a sentence outside of the guidelines. Counsel is requesting a term of imprisonment sentence for Count 1of one year and one day, to be followed by a term of imprisonment of five years for Count 2 for a combined period of imprisonment of 72 months, 1day, with a term of 3 years supervised release.

## OFFENDER CHARACTERISTICS

Marquis Simmons is a 24 year old male who grew up in a neighborhood of New Jersey that was, as he describes it, "a little crazy". His mother was nineteen at the

time of his birth and his father appears to have left shortly thereafter. Marquis' neighborhood was rife with gangs, drug activity and violence. He joined one of those gangs, "Little Crazy Niggers", at age 16 or 17 but reports leaving the gang at age 18. He has one sister, age 19 and two maternal half-brothers, age 17 and 18. His siblings reside with his mother, Hassana Simmons, age 43, in Newark, New Jersey. Raised without a father in his life, Marquis lived with his mother who worked to provide for her four children. His relationship with his mother remains close and she continues to stand with him and support him. He misses his mother. He has expressed to counsel his great desire to be with her again, and she in turn has been in constant touch with Marquis and has contacted counsel on numerous occasions. Marquis does not remember going without the necessities of life, food, clothing and shelter but oddly does not remember what his mother did for work. His inability to remember things seems to be a constant theme in his life. He reports that he went to a hospital for a broken leg in 2012 but does not remember the name of the hospital. Although he says his support network is his mother and a friend, Dashawn, he does not remember the friend's last name. For approximately one year he worked at an auto body shop fixing tires and making $20 to $30 a day but again, as in so many situations, Marquis is unable to remember the address of the shop. Finally, he believes he has a social security number but cannot recall the number. It appears he has never been tested for learning disabilities. His clear

inability to remember simple matters like what his mother did for a living, what hospital he was treated in, where he worked, the last name of a friend or his social security number, screams out for some sort of testing to help him understand his difficulties and his abilities.

He graduated from East Side High School in 2012. His education history consists of 'special education' for behavioral issues. He has no particularized vocational training but he expresses an interest in obtaining vocational training. He has no specific skills and no knowledge of what type of training he might be interested in. He has a limited work history after high school. For a couple of months he worked at a Deli Grocery in Newark that was owned by his co-defendant Jokarly Fernandez. Eventually, it was Fernandez who asked him if he wanted to make some quick money and it was that offer and his decision that resulted in the current charge.

Marquis is, tragically, so similar to many of the defendants before this court: a difficult, fatherless upbringing, by a young mother with many children, in a 'crazy' violent inner city neighborhood with an education system that placed him in the 'special' class and did not provide him with the skills necessary to succeed. He was raised in a neighborhood of drugs and gangs that he joined to be somewhere and then followed by an offer of 'easy money'.

Marquis Simmons has plead Guilty in a timely fashion and with a knowing understanding of the consequences to Counts 1 and 2 charging him with violations of 18 U.S.C. sec.1951 and sec. 924(c) (1) (A). The offense date is August 2, 2013 and Mr. Simmons has been held in federal custody since that date. His five co-defendants have their dispositions pending. The Offense Conduct as stated in the Pre-Sentence Report is accurate.

OFFENSE CONDUCT, BRIEFLY

Starting in August of 2012, Antonio Correia, Sr. was involved with the illegal sale of firearms with a cooperating witness for the ATF. Mr. Simmons was not engaged in this activity. These sales between Mr. Correia and the ATF included three handguns, a 12 gauge shotgun and a AR-15 rifle. Clearly, Mr. Correia Sr. was able to obtain and to use, if only for sale, multiple weapons. Again, Mr. Simmons was not involved with this conduct.

After approximate one year of dealing in illegal weapons, Mr. Correia, Sr. told the cooperating witness that he, Mr. Correia, needed a cash windfall. He asked if the witness knew of a drug dealer that he and his sons could rob. After consulting with the ATF and developing a sting operation, the cooperating witness met with Mr. Correia in a Dunkin Donuts parking lot. The plan was for Mr. Correia and his sons, one of whom, Antonio Correia, Jr., was in the Dunkin Donuts, to rob a

diamond dealer who was to come to Somerville with uncut diamonds and a large amount of cash. During this meeting between the CW and Correia, Sr., the parties opined that the take might be in excess of $50,000.00. The plan by Correia Sr. was to restrain the dealer but not to harm him. Mr. Correia Sr. said he would bring a real gun and a fake gun to the robbery.

On August 2, 2013, the parties met again at the Dunkin Donuts parking lot to carry out the robbery, the sting. The cooperating witness, Mr. Correia, Sr., Julio Rodriquez, and Marquis Simmons of New Jersey drove to the location in the 'sting' car and the other defendants followed in a separate car. On route, Correia Sr., Rodriquez and the C.W. discussed, in Portuguese, the plan. Marquis does not speak Portuguese. Rodriquez roughly translated the conversation for Marquis. The two vehicles arrived at the pre-arraigned location. The 'trap' was closed and all of the defendants were arrested. In post arrest statements, Correia, Sr., Rodriquez and Jokarly Fernandez who was in the following car, all stated that Mr. Simmons was armed with a handgun.

OFFENSE LEVEL

The Base Offense Level for Robbery, 18 U.S.C., sec.1951, is 20. Pursuant to sec. 2B3.1 (b)(4)(B) there is a 2 level increase if "..any person was physically

restrained..".  Also, if the loss is more than $50,000, 2B3.1(7)(C), calls for another 2 level increase.

The defendant is charged with a Conspiracy, Sec. 2X1.1. Pursuant to (b)(2), "If a conspiracy, decrease by 3 levels, unless … adjustments from such guidelines for an intended offense conduct that can be established with reasonable certainty."

The Pre-Sentence report computes an Adjusted Offense Level (Subtotal) of 24. Two levels are added pursuant to sec. 2B3.1 (b)(4)(B), restraint to facilitate the offense. Mr. Correia Sr. had several plastic zip ties with him in the front seat of the car.  The acts necessary for that aspect of the crime appear to have been completed. The Report also adds 2 levels under (7)(C), 'amount of the loss'. Counsel asks the court to not include this increase. Although the Pre-Sentence Report notes that there was talk between the C.W. and Correia, Sr, during the meeting in the Dunkin Donuts parking lot (Paragraph 12). There were no specific acts completed to address a certain amount as listed. Rather, acts were complete to commit a robbery of an uncertain amount.

Should the Court accept that the Adjusted Offense Level should be **22,** rather than **24** ,  the Total Offense Level would be **19**, rather than **21**. The Guidelines for **Level 19**, Criminal History **Category 2**, are a range of 33 to 41 months.

 A violation of Count 2, requires a minimum term of imprisonment of 60 months consecutive to the sentence imposed on Count 1.

## CONCLUSION

A sentence of 72 months followed by a 3 year period of supervision with conditions for training or schooling fully punishes Mr. Simmons and effectuates the goals of the Federal Sentencing Guidelines. Marquis was not the moving force behind this crime. He was however a willing participant for the easy money. With training and education, and close supervision, Marquis will have an opportunity after incarceration to avoid repeating this self-destructive behavior. The goal of appropriate punishment and assistance with retraining and rehabilitation is served with the sentence requested.

Respectfully submitted,

By his attorney

/s/

John G. Darrell, B.B.O. # 114450
16 School Street, 2nd Fl. Rm. 5
Dedham, MA 02026
Tel. # 1.781.407.9799